IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MICHAEL McCORMACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) |
| DEPUY ORTHOPAEDICS, INC., | ) |
| DEPUY INTERNATIONAL, LIMITED, | ) |
| JOHNSON & JOHNSON, | ) |
| JOHNSON & JOHNSON SERVICES, INC., | ) |
| | ) |
| Defendants. | ) **JURY TRIAL DEMANDED** |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, MICHAEL McCORMACK, by and through his attorneys, HURLEY McKENNA & MERTZ, P.C., and, as his complaint against Defendants DEPUY ORTHOPAEDICS, INC., DEPUY INTERNATIONAL, LIMITED, JOHNSON & JOHNSON, and JOHNSON & JOHNSON SERVICES, INC. (hereinafter referred to collectively as "DEPUY"), states as follows:

## I.   INTRODUCTION

1. This is an action seeking compensation for personal injuries caused by the defendants' manufacture, distribution, sale, and marketing of the Depuy Pinnacle Hip Implant.

2. Plaintiff seeks equitable and monetary relief, including compensatory and punitive damages, and all other appropriate relief to which he is entitled under federal and state law.

## II.   JURISDICTION

3. Plaintiff MICHAEL McCORMACK, at all times relevant to this complaint, resided in Dracut, Massachusetts.

4. Defendant DEPUY ORTHOPAEDICS, INC. is an Indiana Corporation with its principal place of business located in Warsaw, Indiana.

5. Defendant DEPUY INTERNATIONAL, LIMITED is a foreign corporation with its principal place of business located in the United Kingdom.

6. Defendant JOHNSON & JOHNSON is a New Jersey Corporation with its principal place of business located in New Brunswick, New Jersey.

7. Defendant JOHNSON & JOHNSON SERVICES, INC. is a New Jersey Corporation with its principal place of business located in  New Brunswick, New Jersey

8. The amount in controversy in this action exceeds $75,000.00

9. The jurisdiction of this Court over this controversy is based on 28 U.S.C. § 1332 (a) (1).

10. The Plaintiff has timely filed this action in this Court.

## III. VENUE

11. MICHAEL McCORMACK experienced severe complications with the DePuy Total Hip System with Pinnacle Acetabular Component ("PINNACLE") in Dracut, Massachusetts, within the District of Massachusetts.  All medical treatment as a result of these complications experienced by plaintiff occurred in the District of Massachusetts.  Accordingly,

venue properly lies in the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1391 (b).

## IV. COMMON ALLEGATIONS

12. The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (ball like structure at the top of the femur), rotating within the acetabulum (a cup-like structure at the bottom of the pelvis). In a healthy hip, both the femur and the acetabulum are strong, and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids. Over time, age and wear break down the cartilage. This forces the bone of the femur to rub directly against the bone of the acetabulum, and it can cause severe pain and immobility.

13. A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem (labeled as hip implant in the diagram), (2) a femoral head, (3) a liner and (4) an acetabular shell. The surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

14. The PINNACLE hip implant design put the metal femoral ball directly in contact with the metal acetabular cup, which produces a large amount of metal-on-metal wear debris.

15. The PINNACLE and its related components were approved under a process by the Food and Drug Administration (hereinafter referred to as the "FDA") known as a 510(k). A

510(k) medical device does not have to go through the rigors of a clinical study to gain approval by the FDA.

16.     In or about 2000, the DEPUY PINNACLE system was approved for use by the FDA through the 510(k) approval process, on the basis that the PINNACLE device demonstrated substantial equivalence to a predicate medical device.

17.     Before April 28, 2010, MICHAEL McCORMACK began medical treatment for bilateral hip pain with David Prybyla, M.D.

18.     Before April 28, 2010, David Prybyla, M.D., an orthopedic surgeon, through his experience and training in the practice of medicine, indicated MICHAEL McCORMACK met the criteria for bilateral total hip replacement.

19.     On or about April 28, 2010, David Prybyla, M.D., implanted the DEPUY PINNACLE, into the left hip of MICHAEL McCORMACK.

20.     On or about September 27, 2010, David Prybyla, M.D., implanted the DEPUY PINNACLE, into the right hip of MICHAEL McCORMACK

21.     At all relevant times and before the bilateral implantation of the PINNACLE in MICHAEL McCORMACK, DEPUY knew that the PINNACLE was defective and harmful to consumers, and that the PINNACLE had an unacceptable failure and complication rate, including but not limited to the propensity for the PINNACLE's acetabular cup to detach, disconnect, and/or loosen from the acetabulum, and for some patients, to develop adverse reactions to high levels of metal debris generated by normal use of the PINNACLE.

22. Sometime before March 7, 2014, MICHAEL McCORMACK began experiencing severe pain in his hips.

23. On or about March 7, 2014, MICHAEL McCORMACK learned that his PINNACLE devices were defective and had failed.

24. Doctors are currently monitoring MICHAEL McCORMACK's blood for metallosis.

25. As a direct and proximate result of DEPUY placing the PINNACLE into the stream of commerce, MICHAEL McCORMACK will likely need to undergo painful bilateral hip revision surgeries.

## **COUNT I – STRICT PRODUCT LIABILITY**

26. MICHAEL McCORMACK incorporates by reference paragraphs 1 through 25 of the Common Allegations as if fully set forth herein.

27. DEPUY had a duty to place into the stream of commerce, manufacture, distribute, market, promote, and sell the PINNACLE in a condition that was not defective and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

28. DEPUY did in fact sell, distribute, supply, and/or promote the PINNACLE to MICHAEL McCORMACK and his implanting physician.

29. DEPUY expected the PINNACLE it was selling, distributing, supplying, manufacturing, and/or promoting to reach, and the devices did in fact reach, implanting

5

physicians and consumers in the State of Massachusetts, including Plaintiff and his implanting physicians, without substantial change in the condition.

30. At the time the PINNACLE left the possession of DEPUY and the time the PINNACLE entered the stream of commerce, the PINNACLE was in unreasonably dangerous and defective condition. These defects include but are not limited to the following:

(a) The PINNACLE was not reasonably safe as intended to be used;

(b) The PINNACLE had inadequate designs for the purposes of hip replacement;

(c) The PINNACLE contained unreasonably dangerous design defects, including inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

(d) The PINNACLE hip implant's design put the metal femoral ball directly in contact with the metal acetabular cup, which produces a large amount of metal-on-metal wear debris;

(e) The PINNACLE's unstable and defective design resulted in hip prosthesis which had risks that exceeded the benefits of the medical device;

(f) The PINNACLE's propensity for acetabular cup to detach, disconnect, and/or loosen from the acetabulum, and for some patients, to develop adverse reactions to high levels of metal debris generated by normal use of the PINNACLE;

(g) The PINNACLE's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

(h) The PINNACLE failed to perform in a manner reasonably expected in light of their nature and intended function, and subjected MICHAEL McCORMACK to an unreasonable risk of harm beyond that contemplated by an ordinary person;

(i) The PINNACLE was insufficiently tested;

(j) The warning to MICHAEL McCORMACK and MICHAEL McCORMACK's implanting physician about the dangers the PINNACLE posed to consumers including MICHAEL McCORMACK were inadequate. The inadequacies of DEPUY's warnings include, but are not limited to, the following:

  i. Insufficient to alert MICHAEL McCORMACK and MICHAEL McCORMACK's physicians as to the risk of adverse events and/or reactions associated with the PINNACLE, subjecting MICHAEL McCORMACK to risks which exceeded the benefits of the PINNACLE;

  ii. Contained misleading warnings emphasizing the efficacy of the PINNACLE while downplaying the risks associated with it, thereby making use of the PINNACLE more dangerous than the ordinary consumer would expect;

  iii. Contained insufficient and/or incorrect warnings to alert consumers, including MICHAEL McCORMACK, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the PINNACLE;

  iv. Did not disclose that the devices were inadequately tested;

      v.      Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the PINNACLE;

      vi.      Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers.

31. MICHAEL McCORMACK used the PINNACLE for its intended purpose, i.e. hip replacement.

32. MICHAEL McCORMACK could not have discovered any defect in the PINNACLE through the exercise of due care.

33. DEPUY as designer, manufacturer, marketer, and distributor of medical devices are held to the level of knowledge of an expert in their field.

34. MICHAEL McCORMACK and the implanting physician did not have substantially the same knowledge as the designer, manufacturer, or distributor: DEPUY.

35. As a direct and proximate result of one or more of the forgoing wrongful act or omissions by DEPUY, MICHAEL McCORMACK was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, MICHAEL McCORMACK was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, MICHAEL McCORMACK prays for judgment against Defendants, DEPUY ORTHOPAEDICS, INC., DEPUY INTERNATIONAL, LIMITED, JOHNSON &

JOHNSON, and JOHNSON & JOHNSON SERVICES, INC., in a sum in excess of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS, together with interests and costs of this action.

## COUNT II – NEGLIGENCE

36. Plaintiff incorporates by reference paragraphs 1 through 25 of the Common Allegations as if fully set forth herein.

37. At all times relevant, it was the duty of DEPUY to exercise due care in designing, testing, manufacturing, distributing, marketing, promoting, and selling of the PINNACLE such that it would be reasonably safe for their intended use.

38. DEPUY's negligence in the designing, testing, manufacturing, distributing, marketing, promoting, and selling of the PINNACLE includes but is not limited to the following:

   a. acetabular components were negligently designed, creating a coverage angle that is too shallow;

   b. acetabular components were negligently designed, creating insufficient coverage of the femoral component;

   c. acetabular components were negligently designed and manufactured, creating increased metal-on-metal wear between the femoral component and the acetabular component;

   d. acetabular components were negligently designed and manufactured, creating increased metal corrosion particular at the junction of the femoral head component and the neck of the femoral stem;

e. acetabular components were negligently designed and manufactured, creating an unacceptable differential hardness of the cup and femoral head that is caused by among other things the technique and/or manner of the heat treatment of the femoral head and the acetabular cup;

f. acetabular components were negligently designed as a monoblock construct, which among other things leads to errors in surgical placement and in fixation of the cup;

g. surgical protocols which, among other things, creates a requisite degree of surgical skill for proper use of the device that is not possessed by a significant number of U.S. surgeons, even after a proper review of all of the PINNACLE surgical technique literature, other DEPUY literature, and proper training in residency programs;

h. DEPUY committed manufacturing errors, including but not limited to component size tolerances out of specification and not within industry acceptable standards;

i. DEPUY, in advertising, marketing, promoting, packaging, and selling the PINNACLE, negligently misrepresented material facts regarding the PINNACLE's safety, efficacy, and fitness for human use by claiming the PINNACLE was fit for its intended purpose when, in fact, it was not;

j. DEPUY, in advertising, marketing, promoting, packaging, and selling the PINNACLE, negligently misrepresented material facts regarding the

      PINNACLE's safety, efficacy, and fitness for human use by claiming the PINNACLE had been adequately and reliably tested when, in fact, it was not;

k. DEPUY, in advertising, marketing, promoting, packaging, and selling the PINNACLE, negligently misrepresented material facts regarding the PINNACLE's safety, efficacy, and fitness for human use by claiming the PINNACLE were safe and effective and were appropriate for use by human beings when, in fact, it was not;

l. DEPUY, in advertising, marketing, promoting, packaging, and selling the PINNACLE, negligently misrepresented material facts regarding the PINNACLE's safety, efficacy, and fitness for human use by claiming the risk of serious adverse events and/or effects from the PINNACLE was comparable to that of other hip replacement systems, when in fact it was not;

m. DEPUY, in advertising, marketing, promoting, packaging, and selling the PINNACLE, negligently misrepresented material facts regarding the PINNACLE's safety, efficacy, and fitness for human use by claiming the PINNACLE had not caused or contributed to serious adverse events and/or effects requiring the premature explants of the devices when, in fact, it had.

39. DEPUY knew or had reason to know that MICHAEL McCORMACK, as a member of the general public for whose use the PINNACLE was placed into interstate commerce, would be likely to use the PINNACLE in a manner described in this Complaint.

40.     DEPUY knew or reasonably should have known of the danger associated with the manner and circumstances of MICHAEL McCORMACK's foreseeable use of the PINNACLE, which danger would not be obvious to the general public.

41.     As a direct and proximate result of one or more of the forgoing wrongful act or omissions by DEPUY, MICHAEL McCORMACK was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, MICHAEL McCORMACK was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, MICHAEL McCORMACK prays for judgment against Defendants, DEPUY ORTHOPAEDICS, INC., DEPUY INTERNATIONAL, LIMITED, JOHNSON & JOHNSON, and JOHNSON & JOHNSON SERVICES, INC., in a sum in excess of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS, together with interests and costs of this action.

## COUNT III — BREACH OF WARRANTY

42.     Plaintiff incorporates by reference paragraphs 1 through 25 of the Common Allegations as if fully set forth herein.

43.     MICHAEL McCORMACK currently is not in possession of any document relating to representations, warnings, and/or communications made by the defendants in this action. MICHAEL McCORMACK reserves the right to present evidence in support of the claim which is not presently in his possession, but which will be discovered in the ordinary course of litigation. Such evidence may include, but is not necessarily limited to: Instruction for Use

Manuals; all written material or information provided on and/or within any and all packaging associated with MICHAEL McCORMACK's devices; manufacturer's labels, package inserts; Adverse Event Reports; clinical trial data; medical literature; medical research findings and opinions; medical publications; advertisements; sales and promotional materials; internal memoranda, emails, communications and databases; sales, prescription and adverse event report databases; and communications from DEPUY in this action, including DEPUY's employees, officers, directors, agents, representatives, contractors and business associates, to the public, medical community, Plaintiff's implanting surgeon and MICHAEL McCORMACK. Upon information, knowledge and belief, MICHAEL McCORMACK alleges the documents, instruments and/or evidence stated above are in the possession of DEPUY.

44. At the time DEPUY marketed, sold, and/or distributed the PINNACLE, it knew that the hip device was intended for human use.

45. At the time DEPUY marketed, sold, and/or distributed the PINNACLE, MICHAEL McCORMACK was a foreseeable user of the devices.

46. At the time DEPUY marketed, sold, and/or distributed the PINNACLE, it expressly and/or impliedly warranted that the hip, including all of their component parts, was safe and merchantable for their intended use.

47. MICHAEL McCORMACK and his implanting surgeons reasonably relied upon the representations that the PINNACLE was of merchantable quality and safe for their intended uses.

48.     MICHAEL McCORMACK used the PINNACLE for its intended purposes.

49.     Contrary to the express and implied warranties, at the time DEPUY marketed, sold and/or distributed the PINNACLE, it was not of merchantable quality or safe for their intended use as described above.

50.     As a direct and proximate result of one or more of the forgoing wrongful act or omissions by DEPUY, MICHAEL McCORMACK was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, MICHAEL McCORMACK was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, MICHAEL McCORMACK prays for judgment against Defendants, DEPUY ORTHOPAEDICS, INC., DEPUY INTERNATIONAL, LIMITED, JOHNSON & JOHNSON, and JOHNSON & JOHNSON SERVICES, INC., in a sum in excess of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS, together with interests and costs of this action.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action.

/s/ Michael T. Mertz_____
One of the Attorneys for Plaintiff

HURLEY McKENNA & MERTZ, P.C.
Attorneys for Plaintiff
33 N. Dearborn Street, 1430
Chicago, Illinois 60602
(312) 553-4900